Rodney E. BRACY, and Cathy
J. Bracy, Plaintiffs,

v.

WINCHESTER METALS CORPORA-
TION, Auric Credit International, S.A.,
Gary Toberty, Dave Abelson, and Alan
Goda, Defendants.

No. 1:94–CV–575.

United States District Court,
W.D. Michigan,
Southern Division.

July 5, 1995.

Brian Smalley Felton, Michael T. Hylland, Warner, Norcross & Judd, Grand Rapids, MI, for plaintiffs.

Richard A. Gaffin, Bradley C. White, Miller, Canfield, Paddock & Stone, Grand Rapids, MI, for defendants.

## OPINION

QUIST, District Judge.

Plaintiffs Rodney and Cathy Bracy filed this securities fraud action seeking to recover losses they allegedly sustained as a result of certain investments. This matter is presently before the Court on plaintiffs' motion for summary judgment on Counts I and II of their First Amended Complaint. The Court heard oral arguments on plaintiffs' motion on April 27, 1995. At the hearing, the Court questioned whether the amount in controversy in this case exceeded $50,000 as required by 28 U.S.C. § 1332. The Court instructed the parties to submit supplemental briefs on the issue of jurisdiction. Having reviewed these briefs and the applicable law, the Court is now satisfied that it has subject matter jurisdiction.

### Facts

See Factual Background section of Opinion

filed November 15, 1994.

### Discussion

Plaintiffs claim that summary judgment is appropriate because there is no genuine issue of material fact with respect to the following:

1) defendants transacted business as a broker-dealer without registering as required by the Michigan Uniform Securities Act (MUSA) M.C.L.A. 451.601, and

2) the margined silver accounts defendants sold qualify as "securities" pursuant to M.C.L.A. 451.801(1). These securities were not registered and thus constitute a violation of M.C.L.A. 451.701.

According to plaintiffs, they are entitled to the consideration they paid for the securities, as well as interest at 6% per year from the date of the payment, plus costs and attorneys' fees.

Defendants insist that this case simply involves a retail sale of silver with a financing arrangement. According to defendants, MUSA does not apply and they were not required to comply with its registration requirements.

### Broker–Dealers

Plaintiffs contend that defendants transacted business in Michigan as broker-dealers and sold commodity contracts without registering under MUSA. Plaintiffs argue that defendants' failure to register makes them strictly liable for plaintiffs' losses. M.C.L.A. 451.601(a) provides:

A person shall not transact business in this state as a broker-dealer, commodity issuer, or agent unless registered under this act.

"Broker-dealer" is defined under M.C.L.A. 451.801(c):

"Broker-dealer" means any person engaged in the business of effecting transactions in **securities** or **commodity contracts** for the account of others or for his or her own account. **"Broker-dealer" does not include** (1) an agent, (2) an issuer, (3) a bank, savings institution, or trust company, (4) **a person who has no place of business in this state if** (A) he or she effects transactions in this state exclusively with or through (i) the issuers of the securities or commodity contracts involved in the transactions, (ii) other broker-dealers, or (iii) banks, savings institutions, trust companies, insurance companies, investment companies as defined in the investment company act of 1940, pension or profit-sharing trusts, or other financial institutions or institutional buyers, whether acting for themselves or as trustees, or (B) **during any period of 12 consecutive months he or she does not direct more than 15 offers to sell or buy into this state in** any manner to persons other than those specified in clause (A), whether or not the offeror or any of the offerees is then present in this state, or (5) a person acting solely as a finder and registered pursuant to this act or acting as a finder under a transaction exempt pursuant to section 402(b)(19). The administrator may by rule or order exclude other persons from the definition of the word "broker-dealer" (emphasis added).

M.C.L.A. 451.801(o) defines a "commodity contract" as:

"Commodity contract" means the transactions dealing in, resulting in, or relating to contracts of purchase or sale of a commodity: for (1) delivery in the future at a specified time or a time to be determined or where delivery is not customarily made, including puts, calls, or any combinations thereof; (2) for present delivery where the value of the commodity is difficult to ascertain except by a person expert in the analysis of the commodity, and the commodity is offered for sale to the general public as an investment; (3) other options; (4) margin contracts; (5) or in general, any interest in an instrument commonly known as a commodity contract.

There is no dispute that defendants did not register as broker-dealers. Plaintiffs assert that this Court has already determined that defendants transacted business in this state. Consequently, the remaining issue is whether the margined silver accounts that defendants sold qualify as a "commodity contract."

Precious metals are specifically included in the definition of "commodity." M.C.L.A. 451.801(n) provides, " 'Commodity' means: ... (4) precious metals." In *Heligman v. Otto*, 161 Mich.App. 735, 411 N.W.2d 844 (1987), the court found that a transaction involving the sale of silver "constituted a commodity contract since it involved a transaction dealing in the sale of a commodity for

delivery in the future." *Id.* at 739, 411 N.W.2d 844. Plaintiffs explain that they purchased silver bullion from defendants but did not take possession of it. Rather, they left it in the possession of Auric to secure the margin account. Plaintiffs also note that each of their silver investments was purchased on margin and that "margin contracts" are specifically included in the definition of a "commodity contract" under M.C.L.A. 451.801(*o*).

Defendants contend that there is a question of fact regarding whether the financing which Auric provided constituted a margin contract. Defendants believe that the transactions can more accurately be classified as financing arrangements. "The Bracys signed Promissory Notes/Security Agreements with Auric. They did not sign margin agreements with Winchester. Further, plaintiffs' silver constituted collateral for the loans, of which Auric retained possession, just like a financing arrangement. Given that plaintiffs' purchases were effectuated through financing arrangements with Auric, rather than through margin contracts with Winchester, the transactions did not involve 'commodity contracts'." Defendants Winchester and Goda's brief at p. 13. Defendants argue that the transactions at issue did not involve commodity contracts. Therefore, the defendants do not fall within the statutory definition of broker-dealer and were not required to be registered.

■ This Court finds that the transactions between plaintiffs and defendants constituted commodity contracts. The plaintiffs are not in the business of purchasing silver as a raw material for manufacturing or reselling to manufacturers. They did not expect the silver to be delivered. Rather, plaintiffs purchased silver as an investment and relied upon defendants for all aspects of the acquisition including the financing arrangements with Auric and storage. In commodities and securities trading, a "margin contract" is just another name for a financing arrangement. Merely because defendants split the "sale" of the silver from the "financing" of the purchase price does not, in this Court's judgment, remove these transactions from the definition of "commodity contract." Because this Court has determined that the transac-

tions constituted commodity contracts, defendants would be required to register as a broker-dealer unless they are exempt from the registration requirement under the limited transaction exclusion.

■ Defendants contend that the limited transaction exclusion applies to them. M.C.L.A. 451.801(c) provides that a broker-dealer does not apply if "during any period of 12 consecutive months he or she does not direct more than 15 offers to sell or buy into this state . . ." Plaintiffs insist that this exemption does not apply because defendants directed more than 15 offers to them alone. In support of their position they direct the Court to Exhibit C which lists each of the alleged offers defendants directed to the Bracys. According to plaintiffs, defendants sold them silver on nine occasions. Defendants maintain they only sold plaintiffs silver five times. After each sale defendants sent plaintiffs a letter stating that they "look forward to a long and profitable relationship." Plaintiffs contend that each of these letters constitutes an additional offer to do business in the future. According to plaintiffs, defendants also contacted plaintiffs on several other occasions with the intent to induce plaintiffs to purchase silver. Defendants do not believe that the record supports plaintiffs' contention. Defendants insist that most of the items listed in plaintiffs' Exhibit C do not constitute "offers" and plaintiffs have been unable to establish that defendants made more than 15 offers to them.

M.C.L.A. 451.801(j)(2) provides:

"Offer" or "offer to sell" includes every attempt or offer to dispose of, or solicitation of an offer to buy, a security or commodity contract, or interest in a security or commodity contract, for value.

Defendants assert that the burden is on plaintiffs to prove there is no factual dispute regarding whether the defendants directed more than 15 offers into this state during a period of 12 consecutive months.

Plaintiffs argue that even if defendants made less than 15 "offers" the exemption to the broker-dealer definition still does not apply because the exemption applies to "offers" not actual "sales." They cite two opinions

that have interpreted the Uniform Securities Act as requiring a foreign broker to register before making *any sales*. *See In re Blinder Robinson & Co.*, 1986 Ia.Sec. LEXIS 150 (Iowa Ins. Comm'r Sept. 2, 1986); Mass.Sec. Div. Interpretive Op. (March 20, 1985), 2 Blue Sky L.Rep. (CCH) ¶ 31,609. Plaintiffs also cite *Heligman v. Otto*, 161 Mich.App. 735, 411 N.W.2d 844 (1987), to support their position that defendants constituted a broker-dealer.

> [I]n general, a person must engage in the buying and selling of securities as a business, either as principal or agent, in order to be deemed a broker or dealer under blue sky laws, and so the question of whether or not he receives compensation for so acting may have a significant bearing upon such person's status in this regard.

> We agree that in order for a person to be engaged in the business of effecting transactions in securities or commodity contracts for purposes of being a broker-dealer under the Uniform Securities Act, he must have performed such transactions often enough to demonstrate that they are in fact a part of his or her business.

161 Mich.App. at 741, 411 N.W.2d 844 (citations omitted).

During oral argument, defendants argued that the Court should blur the distinction between "offers" and "sales" with a practical reading of the statute—in effect, it would not make sense to allow 15 "offers" if no "sales" were permitted. However, the Sixth Circuit has recently indicated that the Michigan Uniform Securities Act is to be interpreted literally. *See Investors Equity Group, Inc. v. Universal Symetrics Corp.*, 53 F.3d 159 (6th Cir.1995). Even a cursory analysis of the act shows that the act, itself, clearly distinguishes between "offers" and "sales." While "offer" is defined in M.C.L.A. 451.801(j)(2), "sale" is defined in M.C.L.A. 451.801(j)(1). Likewise, in the body of the statute, the legislature constantly distinguishes between "offers" and "sales." E.g., M.C.L.A. 451.802. In addition, the leading treatise on securities law in Michigan states that only offers are excluded from the definition of a broker-

dealer and answers the practical construction argument of defendants:

> Broker-dealers not registered in Michigan sometimes use the exemption for 15 offers to sell or buy in Michigan in a 12-month period to 'test the market' with a view to registering for subsequent sales to Michigan residents. Note that the exemption is available only to a person who has no place of business in Michigan. Since only offers are excluded from the definition, there is no express exclusion for the sales transaction.

Cyril Moscow & Hugh H. Makens, *Michigan Securities Regulation*, § 4.02E (1994). For these reasons, this Court finds that the limited transaction exclusion does not apply to the defendants who made at least five "sales" within the State of Michigan. Therefore, this Court concludes that defendants violated M.C.L.A. 451.601 because they transacted business in this state as a broker-dealer without registering under the Act.

Because this Court has concluded that defendants violated M.C.L.A. 451.601, it is not necessary to discuss plaintiffs' allegation that defendants violated M.C.L.A. 451.701 by selling unregistered securities.

M.C.L.A. 451.810 sets forth the measure of damages for a violation of M.C.L.A. 451.601, identified as section 201(a). The statute states in part:

> (a) Any person who does either of the following shall be liable to the person buying the security or commodity contract from him or her and the buyer may sue either at law or in equity to recover the consideration paid for the security or commodity contract, together with interest at 6% per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of income received on the security or commodity contract, upon the tender of the security or commodity contract, or, if he or she no longer owns the security or commodity contract, for damages which shall be the amount that would be recoverable upon a tender less the value of the security or commodity contract when the buyer disposed of it and interest at 6% per year from the date of disposition:

(1) Offers or sells a security or commodity contract in violation of section 201(a), 301, or 405(b)....

Plaintiffs calculate their damages in this manner:

Plaintiffs invested $57,344 with defendants by purchasing margined silver accounts. When these accounts were liquidated against plaintiffs' will, they received only $8,037. Therefore, defendants are jointly and severally liable for the difference—$49,307, along with $3,868 in interest computed at 6% per year from the date of each sale, costs, and reasonable attorneys' fees.

In a letter dated May 31, 1995, plaintiffs' counsel advised the Court that plaintiffs had received $3,389 from Motivex Inc. in connection with the final silver transaction arranged by defendant Winchester Metals Corporation. Consequently, plaintiffs' damages should be adjusted downward by that amount. Plaintiffs' counsel indicated that the revised damage calculation is $45,918 exclusive of statutory attorneys' fees or interest. This Court directs the plaintiffs to submit proofs in a form admissible into evidence as to the amount of their damages, plus statutory interest, costs and attorneys fees.

For the reasons set forth above, plaintiffs' motion for summary judgment will be granted in part. Plaintiffs' motion for summary judgment on Count II of their First Amended Complaint will be granted. Because this ruling grants plaintiffs complete relief, this Court will not address plaintiff's motion for summary judgment on Count I of their First Amended Complaint. An Order consistent with this Opinion will be entered.